FILED

97 APR 30 PM 3: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRICON METALS & SERVICES,  }
INC.,                       }
                            }
    Plaintiff,          }
                            }   CASE NO. CV 96-B-3045-S
v.                          }
                            }
EFFECTIVE MANAGEMENT        }
SYSTEMS, INC.,              }
                            }
    Defendant.

ENTERED

APR 3 0 1997

## MEMORANDUM OPINION

Currently before the court is defendant Effective Management Systems, Inc.'s Motion to Compel Arbitration and Stay Action. Plaintiff, Tricon Metals & Services, Inc. (hereinafter "Tricon"), brought suit against defendant, Effective Management Systems (hereinafter "EMS"), in the Circuit Court of Jefferson County. EMS removed this action to federal court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction. Alleging that the arbitration clause in the sales contract between EMS and Tricon required that this action be arbitrated, EMS filed its motion to compel arbitration and stay the action. Plaintiff contends that the arbitration clause is not enforceable because EMS was doing business in Alabama without properly registering as a foreign corporation. EMS counters that it was not required to qualify to do business in Alabama because it was engaged in interstate rather than intrastate business. The primary task for the court, therefore, is to determine the interstate or intrastate nature of EMS's business. The court is of the opinion that EMS was engaged in interstate business, and that, therefore, the arbitration clause is enforceable. Consequently, the motion to compel is due to be granted.

8

## FACTUAL SUMMARY

Tricon is a corporation organized under the laws of the State of Alabama and is engaged in the sale and fabrication of alloy metals. (Compl. ¶¶ 1, 3). EMS is a corporation organized under the laws of the State of Wisconsin and is engaged in the manufacturing, marketing, and sales of computer software. (Compl. ¶ 2). Tricon purchased a software system and an installation and employee training package from EMS in May, 1996. (Aff. of Thomas Allen[1] ("Allen Aff.") ¶ 7). Prior to the sale, EMS had various contacts with Tricon in Alabama over a period of five months. These pre-sale contacts included mail and telephone communication as well as an EMS sales representative's visiting Tricon on three occasions for an initial sales call, a business survey, and a software demonstration. (Allen Aff. ¶¶ 3-6). After the sale, EMS visited Tricon once to install the software system and on two occasions for three-day training sessions with Tricon employees. (Allen Aff. ¶¶ 8-9). Since the software training sessions, Tricon has alleged the EMS system does not function properly and that EMS committed fraud, deceit, and suppression by misrepresenting or suppressing material facts to Tricon prior to their sales agreement. (Compl. ¶¶ 17-29). Tricon seeks compensatory damages of $175,000 plus punitive damages, interest and court costs.

The sales agreement between Tricon and EMS includes a mandatory arbitration clause that states as follows:

> Any controversy or claim arising out of or relating to this Agreement or its breach shall only be settled in accordance with the Commercial Rules of the American Arbitration Association in Milwaukee, WI and judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

---

[1] Thomas G. Allen is the Vice President of Sales and Marketing of EMS.

(Def.'s Ex. A § 5.1). On the basis of that clause, EMS seeks to compel arbitration. Tricon asserts that the arbitration clause is unenforceable because the sales contract is void. Tricon argues the contract is void because EMS was a foreign corporation doing business in Alabama but had failed to qualify to do business in Alabama. Therefore, pursuant to Alabama Code § 10-2B-15.02, Tricon asserts that EMS may not enforce its contracts through court action.

## SUMMARY OF THE LAW

The Alabama Constitution provides that no foreign corporation shall engage in intrastate business in Alabama without qualifying to do business in Alabama. Ala. Const. Art. XII § 232.[2] Additionally, Alabama's "door closing" statute precludes a corporation not qualified to do business in Alabama from enforcing a contract to be performed in Alabama. *See* Ala. Code § 10-2B-15.02 (1994 & Supp. 1996);[3] *Sanjay, Inc. v. Duncan Constr. Co.*, 445 So. 2d 876, 879 (Ala. 1983). Specifically, the statute declares, in part:

> All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a Certificate of Authority to transact business in this state shall be held void at the action of the foreign corporation or any person claiming through or under the foreign corporation by virtue of the contract or agreement.

---

[2] "No foreign corporation shall do business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association." Ala. Const. art. XII, § 232. This section was amended, Ala. Const. amend. 473, but the language quoted here was unaffected by the amendment.

[3] The former Alabama Code provision relating to the consequences of failing to qualify as a foreign corporation was Ala. Code § 10-2A-247. That section was replaced by Ala. Code § 10-2B-15.02 in 1994. *See* Ala. Code § 10-2B-15.02 *Commentary* ¶ 2 (1994). In 1995, however, Ala. Code § 10-2B-15.02 (1994) was repealed and replaced with the current version of the statute. 1995 Ala. Acts No. 95-663, §§ 2-3; Ala. Code § 10-2B-15.02 *Editor's notes* (Supp. 1996).

3

Ala. Code § 10-2B-15.02(a) (1994 & Supp. 1996). Nonetheless, a foreign corporation is not subject to any state's regulations requiring it to be qualified to do business in that state if the foreign corporation is engaged exclusively in interstate commerce, due to the protection of the Commerce Clause of the United States Constitution. U.S. Const., Art. I, § 8, cl. 3; *see Eli Lily & Co. v. Sav-On Drugs, Inc.*, 366 U.S. 276, 277 (1976). This general principle has been recognized by the Alabama Supreme Court as providing protection to foreign corporations conducting business in Alabama that either (1) is exclusively interstate, or (2) is intrastate only to the extent necessary and incidental to the interstate activity. *Stewart Mach. & Eng'g Co. v. Checkers Drive-In Restaurants of North America*, 575 So. 2d 1072, 1074 (Ala. 1991).

The determination of whether or not business activity is interstate or intrastate requires a very fact-specific analysis. The cumulative effect of a "continuing presence" in Alabama, even in the course of one transaction, can convert otherwise interstate activity into doing business in Alabama. *See Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.*, 548 So. 2d 1336 (Ala. 1989) (selling, hauling and erecting a well-drilling rig was intrastate activity); *Green Tree Acceptance, Inc. v. Blalock*, 525 So. 2d 1366, 1370 (Ala. 1988) (sale and supply of materials and labor for mobile home repair constituted intrastate business). Mere solicitation of business in Alabama, however, does not rise to the level of intrastate commerce, *SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co.*, 644 So. 2d 892, 894 (Ala. 1994), nor does the sale, transportation and delivery of out-of-state goods by a foreign corporation entail intrastate commerce. *See Sanwa Business Credit Corp.*, 548 So. 2d at 1337 (citation omitted).

4

DISCUSSION

I. The Validity of the Contract

Whether the arbitration clause in the sales contract between EMS and Tricon is enforceable depends upon whether the contract itself is enforceable. *See Allied-Bruce Terminix Co. v. Dobson*, 115 S. Ct. 834, 843 (1995); *A.J. Taft Coal Co. v. S&H Contractors, Inc.*, No. 1:88-cv-436-MHS, 1988 WL 235668, at *5 (N.D. Ga. Oct. 4, 1988), *aff'd on other grounds*, 906 F. 2d 1507 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991). Therefore, the threshold question is the validity of the underlying contract. If EMS, a foreign corporation not qualified to do business in Alabama, was engaged in intrastate commerce, the contract, including the arbitration clause, would be unenforceable under Alabama law. *See* Ala. Code § 10-2B-15.02 (1994 & Supp. 1996).

It is undisputed that EMS was not qualified to do business in Alabama at the time of its contract with Tricon. Under *SGB Construction Services*, however, EMS would not be required to qualify as an Alabama corporation merely for its solicitation of an interstate contract with Tricon. *SGB Constr. Services,* 644 So. 2d at 894. Thus, the court must determine whether EMS's activities subsequent to the sale involved interstate or intrastate business.[4]

Tricon argues that EMS's combined activities relating to the sales contract constitute a continuing presence in the State of Alabama, and thereby constitute intrastate business.[5] In

---

[4] As noted above, the statute section at issue has just recently been passed, but the parties have treated the issue as if prior case law is applicable to the current statute. Because the court does not see and has not been apprised of any reason to hold differently, the court will apply this case law to the present statute.

[5] The Alabama Supreme Court has described "intrastate" activities by a foreign corporation as "establish[ing] a continuing presence in the state over and above the mere shipping of commodities between the states." *Wise v. Grumman Credit Corp.*, 603 So. 2d 952, 953 (Ala.

support of this view, Tricon relies on several cases in which the combination of labor and services provided by a foreign corporation was held to be intrastate business. *See, e.g., Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.*, 548 So. 2d 1336 (Ala. 1989) (moving and re-building oil drilling rig was intrastate business); *Green Tree Acceptance, Inc. v. Blalock*, 525 So. 2d 1366 (Ala. 1988) (sale of mobile home and supply of materials and general skill labor to repair defects in the mobile home was intrastate commerce); *Sanjay, Inc. v. Duncan Constr. Co.*, 445 So. 2d 876 (Ala. 1983) (sale, delivery, and supply of labor and management to construct prefabricated building were intrastate activities); *Computaflor Co. v. N.L. Blaum Constr. Co.*, 265 So. 2d 850 (1972) (sale, delivery, and labor to construct a gymnasium floor were intrastate activities).

Tricon analogizes the combination of sales, installation, and employee training by EMS to the sales, delivery and construction that the Alabama Supreme Court has previously held to be intrastate commerce. The cases that have held a labor and construction combination to be intrastate commerce, however, are factually distinguishable from the present case. The contracts in those cases between a foreign corporation and an Alabama business were contracts in which one of the main purposes was to provide labor and construction services in Alabama. On the other hand, the primary purpose of the sales contract between EMS and Tricon was to provide a software system that was created out of state. The sophisticated nature of the system necessitated installation and employee training incident to the interstate sale.

In *Green Tree Acceptance*, the court stated that the supply of labor to repair defects in the mobile home as part of the sales contract was not merely incidental to the contract, but was

---

1992).

6

"substantial." *Green Tree Acceptance*, 525 So. 2d at 1371. Furthermore, the court distinguished the general skill labor that was supplied by the foreign corporation in *Green Tree Acceptance* from highly-specialized, skilled labor, such as was provided by EMS in its contract with Tricon. *See id.* Importantly, the court noted that the general skill labor provided in *Green Tree Acceptance* could have been furnished by local sources and was not necessary for the interstate sales contract. *Green Tree Acceptance*, 525 So. 2d at 1371-1372.

In *Sanjay*, the intrastate commerce involved a contract to build a motel in Sheffield, Alabama in which a foreign corporation supplied labor and materials. *Sanjay*, 445 So. 2d at 877, 880-81. *Sanjay* also differs from the present case in the purpose of the contract and the resulting scope of the foreign corporation's activities in Alabama. Although a portion of the motel was prefabricated outside Alabama, the contract in *Sanjay* was principally a construction contract that was to be performed primarily in Alabama. *See id.* at 877. This contract, involving the construction of an entire building, including, among other things, the provision of labor, materials, and on-site management over a period of months, constituted much greater activity within Alabama than the installation and employee training conducted by EMS over a period of approximately six days. Likewise, in *Computaflor*, the court focused on the purpose of the contract, which was not just the sale and delivery of an article of commerce, but the construction of an improvement--a gymnasium floor--at the Alabama site. *Computaflor*, 265 So. 2d at 852.

Finally, in *Sanwa Business Credit Corp.*, where the foreign corporation hauled and assembled an oil drilling rig in Alabama, the court compared the foreign corporation's activities to "building a bridge" and again illustrated the importance of the contract's purpose in the interstate/intrastate commerce analysis. In particular, the court held that the "assembly of the rig

was not an adjunct to the transportation; the transportation was an adjunct to the erection," and hence, was intrastate commerce. 548 So. 2d at 1340.

In all of the aforementioned cases, the foreign corporations were held to be engaged in intrastate business because the contracts involved the time and labor intensive construction of a major improvement or an entire building in Alabama. Likewise, each involved a foreign corporation's provision of general skill labor as was necessary to build a motel, repair a mobile home, construct a gymnasium floor, or erect an oil drilling rig. In contrast, the provision of labor and training by EMS necessitated specially-skilled, technical labor. The foreign corporations in *Green Tree Acceptance*, *Sanjay*, *Computaflor*, and *Sanwa Business Credit Corp.* were not in any better position to supply the labor than an Alabama business. *See, e.g., Green Tree Acceptance*, 525 So. 2d at 1371. In the present case, however, EMS, as the creator of the custom-designed software system, was the logical source for installation and training instruction. Unlike the labor supplied in the cases cited above, a foreign corporation's supply of highly specialized labor which is incident to a sales contract has been held to be interstate commerce. *See Delta Molded Products v. Improved Machinery, Inc.*, 416 F. Supp. 938 (N.D. Ala. 1976), *aff'd sub nom. Sterne v. Improved Machinery, Inc.*, 571 F.2d 957 (5th Cir. 1978); *Wallace Constr. Co. v. Industrial Boiler Co.*, 470 So. 2d 1151 (Ala. 1985); *cf. Phenix City-Cobb Hospital Authority, Inc. v. Sun Pointe Properties, Inc.*, No. 1950245, 1997 WL 1906, at *1-2 (Ala. Jan. 3, 1997) (holding that activities were intrastate because, inter alia, MRI machine could have been serviced by local workers and foreign corporation's employees were not providing service that was specific to its machine). The court is of the opinion that the supply of a software system and the accompanying installation and

training necessary for the sale is more closely aligned with this second line of cases involving highly specialized labor than with the labor and construction contract cases discussed above.

In *Delta Molded Products v. Improved Machinery, Inc.*, the foreign corporation's sale of plastic molding machines manufactured out of state, and the supply of two "experts" to assemble and maintain the machines and to train in-state employees to operate the machines did not rise to the level of intrastate commerce. 416 F. Supp. 938, 943-944 (N.D. Ala. 1976). Rather, the court held that these activities were "totally essential to the accomplishment of the interstate transaction . . . and without such an agreement, [the Alabama company] could not within reason have purchased the machines." *Delta Products*, 416 F. Supp. at 943. The court determined that due to the highly complex machinery involved, the interstate sale of such equipment necessarily involved assembly, installation, and training by the foreign corporation. *Id.*, at 943-944. The *Delta Products* court relied on *Houston Canning Co. v. Virginia Can Co.*, 100 So. 104 (1924), wherein a foreign corporation's contract for lease of a can closing machine included maintenance furnished by the foreign corporation and was held to be interstate commerce.

Similarly, in *Wallace Construction Co. v. Industrial Boiler Co.*, 470 So. 2d 1151 (Ala. 1985), the court held that Industrial Boiler Co., a Georgia corporation, engaged in interstate commerce even though its sales contract for a heating system boiler involved approximately 295 days of in-state labor and other substantial activities within Alabama.[6] *Id.* at 1155-56. Despite a list of significant Alabama contacts related to Industrial Boiler Company's contract performance,

---

[6] Industrial Boiler Company's activities in Alabama included: (1) employing one to five of its own employees and some local, manual laborers throughout the installation; (2) purchase or lease of additional and necessary heavy equipment (crane, forklift, etc.) in Alabama; and (3) purchase of additional parts from Alabama merchants. *Id.* at 1152.

9

the court focused on the sophisticated nature of the labor Industrial Boiler provided.[7] *Id.* at 1152-53. Quoting a much earlier case, *Wallace* restated the general principle that "mere installation of machinery or other apparatus, including assembly of its completed and adjusted parts, and its erection in its place for use is but an incident of the sale, and is not, in that connection an act of local business, if the sale and delivery itself is an act of interstate commerce." *Id.* at 1153 (quoting *Puffer Mfg. Co. v. Kelly*, 73 So. 403, 404-05 (1916)). Furthermore, the court continued, "[t]his is especially true where the manufacturer of complex machinery or apparatus, the satisfactory operation of which must largely depend upon the nicety or perfection of its adjustments, agrees to deliver it in working order to the purchaser. Such an agreement is a valuable trade inducement, and is a reasonable and legitimate incident of the sale itself." *Id.* at 1153 (quoting *Puffer*, 73 So. at 404-05).

The Alabama Supreme Court has recently affirmed the *Wallace* analysis. *See Phenix City-Cobb Hospital Authority, Inc. v. Sun Pointe Properties, Inc.*, No. 1950245, 1997 WL 1906 (Ala. Jan. 3, 1997). In *Sun Pointe*, the court held that Sun Pointe's activities, as a corporation not qualified to do business in Alabama, were intrastate commerce. *Sun Pointe*, 1997 WL 1906, at *2. The foreign corporation's activities included, among other things: (1) the sale of a magnetic resonance imaging (MRI) machine to an Alabama corporation, (2) instruction for the Alabama

---

[7] Later in *Green Tree Acceptance*, the court explained that in *Wallace* it was in the best interest of both the buyer and seller for the manufacturer (the foreign corporation) to install the machine. The court noted that it was possible for someone other than the manufacturer to supply the labor and install the machine; "nevertheless, given the nature of the product, the manufacturer/seller was in the best position to do so. It is this element that made supplying the labor for installation of the machine necessary to the interstate sale." *Green Tree Acceptance*, 525 So. 2d at 1371.

hospital's employees, and (3) permanent placement of a corporate representative in Alabama for the sole purpose of servicing the MRI machine and training hospital employees. *Id.* at *1. The court distinguished *Sun Pointe* from *Wallace* on the basis that the installation of the boiler in *Wallace* could have been performed only by persons familiar with that particular type of boiler and that the work could be done only in the state. On the other hand, the MRI maintenance and training provided by Sun Pointe could have been supplied by anyone familiar with MRI machines in general. *Id.* at *2. In other words, the MRI training and maintenance did not require the specialized knowledge and technical skill that only the manufacturer or supplier could provide; therefore, the court held that the contract involved intrastate business activity. *Id.*

The determination of whether commercial activity is interstate or intrastate depends largely on scrutiny of the particular facts involved, but the Alabama Supreme Court has consistently upheld interstate contracts involving the kind of activity in which EMS was engaged. The post-sale services provided by EMS do not comprise the type of general skill labor contemplated by the court in *Green Tree Acceptance* and similar cases. Rather, EMS provided the singular know-how necessary for installation of a custom-designed computer software system. This type of labor more closely resembles that present in *Delta Molded Products v. Improved Machinery, Inc.*, *Wallace Construction, Co. v. Industrial Boiler Co.*, and *Houston Canning Company v. Virginia Can Company*. EMS's installation of the system and the training of Tricon's employees were incident to the interstate sale of the software system, rather than the sale being a prelude to an intrastate transaction involving installation and employee training. Therefore, because EMS engaged only in interstate commerce, Alabama's "door closing" statutes do not preclude it from enforcing its contract, which includes an arbitration clause, with Tricon.

11

## II. Application of the Arbitration Clause

Having determined that the contract is enforceable by EMS, the court is of the opinion that the motion to compel is due to be granted. The contract at issue is a written agreement evidencing a transaction in interstate commerce. Furthermore, the contract between these two parties states that "[a]ny controversy or claim arising out of or relating to this Agreement or its breach" shall be resolved through arbitration. Tricon has not alleged that the arbitration agreement itself was induced by fraud, and thus, even a claim that the contract as a whole was induced by fraud would be subject to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-404 (1967). In fact, other than contesting the validity of the contract as a whole based on EMS's alleged failure to register as a foreign corportation, Tricon has not contested the applicability of the arbitration clause at all.

The Federal Arbitration Act evinces a liberal federal policy in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 of title 9, United States Code, states that an arbitration clause in a written agreement evidencing a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Having considered the matter, the court is of the opinion that Tricon's complaint encompasses controversies or claims "arising out of or relating to th[e] Agreement or its breach." Consequently, the allegations in plaintiff's complaint

12

are subject to arbitration. Because Tricon has refused to arbitrate the matter, an order compelling arbitration under 9 U.S.C. § 4 is appropriate, and the motion to compel is due to be granted.[8]

## CONCLUSION

Based on the foregoing, the court is of the opinion that the motion to compel is due to be granted. The contract at issue is not void because the transaction in question was interstate rather than intrastate in nature. Consequently, the contract is enforceable despite the fact that EMS did not register as a foreign corporation doing business in Alabama. Thus, the arbitration clause is due to be enforced, and the motion to compel is due to be granted. Finally, on the basis of an agreement between the parties made at oral argument, the court will dismiss this action without prejudice, retaining jurisdiction only for the limited purposes of enforcing its order compelling arbitration and entering judgment based on the outcome of the arbitration. Consequently, the motion to stay is moot.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 30th day of April, 1997.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
United States District Judge

---

[8] In EMS's motion to compel, EMS refers to 9 U.S.C. § 3 as the basis for its motion. Motions to compel arbitration, however, are properly brought under 9 U.S.C. § 4. The court will consider EMS's motion a motion to compel under § 4 as well as a motion to stay under § 3. As will be discussed below, however, the motion to stay is moot.